MAURA ALEXANDER ET AL. *v.* RETIREMENT BOARD
OF THE CITY OF WATERBURY
(AC 18844)

Lavery, Spear and Dupont, Js.[1]

Argued February 23—officially released May 23, 2000

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Henry F. Murray*, with whom, on the brief, was *Daniel E. Livingston*, for the appellants (plaintiff Marie Colacrai et al.).

*Elena Ricci Palermo*, corporation counsel, with whom, on the brief, was *Kevin M. Johnson*, for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiffs[2] appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant, the retirement board of the city of Waterbury (retirement board). The court concluded that the retirement board's decision to impose conditions on the reinstatement of the plaintiff teachers in the Waterbury retirement system (retirement system) was not arbitrary or capricious. On appeal, the plaintiffs claim that the court improperly failed to find that (1) the retirement board exceeded its power under § 2762 of the code of the city of Waterbury, and (2) the actions of the retirement board in adopting a statute of limitations and applying it retroactively to the plaintiffs' claims for reinstatement in the retirement system vio-

---

[2] The plaintiffs in the trial court were twenty-nine present and retired teachers in the Waterbury school system who had been excluded from participation in the Waterbury retirement system. Nine of those plaintiffs, Marie Colacrai, Jane Cooney, Mary Doyle, Olive Kiely, Jean Lecours Molitierno, Joanne Rotella, Kathleen Snyder, Eileen Stango and Mary Lindsay, have appealed to this court from the trial court's dismissal of their appeal. We refer to them as the plaintiffs in this opinion.

lated the plaintiffs' rights to due process. Additionally, the plaintiffs claim that the court's construction of § 2762 of the code renders that section unconstitutionally void for vagueness. We agree with the plaintiffs' first claim and reverse the judgment of the trial court.[3] We, therefore, do not address the plaintiffs' constitutional claims.

The following facts are not in dispute. On June 10, 1987, the Waterbury Teachers Association (teachers association) submitted a grievance on behalf of sixty-two teachers, claiming that the Waterbury board of education had violated the collective bargaining agreement between the board of education and the teachers association by failing to include the teachers on the membership rolls of the retirement system. The teachers on whose behalf the grievance was filed had been teachers in the Waterbury school system prior to March 1, 1970, had resigned from the school system prior to that date and had been rehired as teachers on later dates subsequent to March 1, 1970. The grievance was based on the fact that, upon their return, the teachers were not permitted to participate in the retirement system.

The grievance was submitted to an arbitrator. The primary issue before the arbitrator was whether the plaintiffs should be considered "newly employed" pursuant to a provision of the collective bargaining agreement that provided that "[t]eachers newly employed after March 1, 1970, shall not be included in the City of Waterbury Retirement Systems." If the plaintiffs were deemed "newly employed," they would be excluded from the retirement system. If they were

---

[3] We do not reach the court's conclusion that the retirement board did not act capriciously or arbitrarily because we conclude that the retirement board did not have the power or discretion at all to impose the conditions in question.

not "newly employed," they could be included in the retirement system.

On the basis of the past practices of the board of education in allowing three similarly situated teachers to join the retirement system, the arbitrator concluded that the board of education had breached the collective bargaining agreement by denying the teachers the opportunity to participate in the retirement system. The arbitrator concluded that "newly employed" did not include teachers who had been employed by the Waterbury school system prior to March 1, 1970, and who had been rehired subsequent to March 1, 1970. The arbitrator, therefore, ordered the board of education to "submit the names of the sixty-two (62) teachers . . . to the Waterbury Retirement System for inclusion *in accordance with whatever statutory provisions are in effect,* so that these persons may make whatever payments are statutorily determined to be necessary in order to insure that they are 'members in good standing' of the City of Waterbury Retirement System." (Emphasis added.)

The board of education filed an application in the Superior Court seeking to vacate the arbitration award, and the teachers association filed an application for an order confirming the award. Thereafter, the parties stipulated that the number of teachers included within the arbitrator's award should have been forty-eight rather than sixty-two. The trial court vacated the award in part and confirmed it in part, concluding that the arbitrator exceeded his authority and that the award was void as to the retirement board because the retirement board was not a party to the arbitration and did not have an opportunity to be heard. The teachers association appealed to the Appellate Court, and the appeal was transferred to the Supreme Court pursuant to Practice Book § 4023, now § 65-1.

The Supreme Court reversed the judgment of the trial court and upheld the arbitration award on the basis of the conclusion that the board of education had breached its collective bargaining agreement with the teachers when the board of education concluded that the teachers were "newly employed." More specifically, the court stated "that the award in this case can reasonably be construed to require the [board of education] to notify the Waterbury retirement board that the arbitrator determined that the [board of education] had breached the collective bargaining agreement between it and the [teachers association] when it concluded that the forty-eight teachers were newly employed for the purpose of determining their eligibility for enrollment in the Waterbury retirement system. The award can also reasonably be interpreted to require that, in conjunction with this communication, the [board of education] send the names of the forty-eight teachers to the retirement board with a recommendation that they hereafter be included in the retirement system. Because the Waterbury retirement board is not bound by the arbitrator's award, however, it retains the discretion granted by the Waterbury city code to deny the teachers enrollment. In addition, the retirement board may insist that the teachers, to be eligible for enrollment, comply with the procedures required for applying for reinstatement in the system under § 2762 of the Waterbury city code." *Board of Education* v. *Waterbury Teachers Assn.*, 216 Conn. 612, 620–21, 583 A.2d 626 (1990).

The Supreme Court, thus, made it clear that the plaintiffs' eligibility to enroll under the collective bargaining agreement was secure. The court could not order the retirement board to reinstate the plaintiffs in the retirement system because the retirement board was not a party to the arbitration or a party before the Supreme Court. The court affirmed the arbitration award, which was tantamount to ordering the board of education to

send the names of the teachers involved to the retirement board with the recommendation that the teachers be reinstated in accordance with the discretion afforded by § 2762 of the code.

In compliance with the decision and the underlying arbitrator's award, in a letter dated April 24, 1991, sent to the retirement board, the board of education recommended that the forty-eight plaintiffs be included in the Waterbury retirement system. A hearing was held before the retirement board on April 14, 1993. On April, 30, 1993, the retirement board denied the plaintiffs' requests. No record was made of the retirement board's hearing and the reasons for its decision. The forty-eight plaintiffs appealed the decision to the Superior Court. On June 6, 1994, the trial court remanded the case to the retirement board for a de novo hearing, suggesting that the retirement board submit its decision in writing and include the facts and law relied on in making its decision. Thereafter, the retirement board met on six separate occasions, and on December 6, 1996, it adopted a resolution setting forth its conditions for reinstatement in the retirement system. Basically, the retirement board indicated that it would allow some of the teachers to join the retirement system, but that it did not want to allow teachers who had "sat on their opportunities and did not act on them" to join.[4] The resolution reads as follows: "The City of Waterbury

---

[4] Specifically, David Bozzuto, a commissioner on the retirement board, stated the reasons for the board's decision: "We spent [a] considerable amount of time discussing these issues, and I think one of the strong considerations that the board came to was that, we seriously took into consideration the history of the case, the history of the applicants, the charter and code provisions. One of the concerns that this board has, and I think the reason for the period of time limitations that we put on it, is that we were concerned with people who sat on their opportunities and did not act on them. We felt that a cutoff period of time needed to be made, and the six years was determined based upon what is often considered the most generous statute of limitations, which is the contract statute of limitations."

Retirement Board hereby resolves to allow those Waterbury Teachers who meet the following conditions to re-enter into the City of Waterbury Retirement System.

"1. Those individuals who made formal and direct application to the Waterbury Retirement Board within 6 years or 72 months from their last rehire date of employment.

"2. Those individuals who made formal and direct application to the Waterbury Retirement Board within 6 years or 72 months from the Waterbury Retirement Board meeting and decision of May 13, 1982 on Joan Odoardo."[5]

As a result of the time limit imposed by the retirement board, nineteen teachers of the forty-eight who brought the action qualified for reinstatement in the retirement system, and twenty-nine teachers were excluded. All of the nineteen teachers who qualified under the resolution have accepted the retirement board's decision and elected to participate. The remaining twenty-nine teachers appealed to the Superior Court, claiming that the decision of the retirement board was arbitrary, capricious and an abuse of discretion. The trial court assumed that the retirement board had blanket discretion or authority to deny enrollment in the retirement plan and then concluded that the retirement board's decision was not arbitrary or capricious, and dismissed the plaintiffs' appeal. Nine of the remaining twenty-nine teachers appeal from that decision.

The standard of review in appeals from the decisions of administrative agencies is well established. " 'Judicial

[5] Joan Odoardo was the last of three teachers readmitted into the retirement system subsequent to their rehiring after March 1, 1970. The arbitrator had concluded that the board of education's actions with regard to these individuals indicated that it did not consider such people "newly employed" for purposes of the collective bargaining agreement. One of the other two teachers previously reinstated was reinstated eight years after her rehiring.

review of an agency decision is limited. . . . [W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts.'" *O'Callaghan* v. *Commissioner of Social Services*, 53 Conn. App. 191, 203, 729 A.2d 800 (1999), quoting *Burinskas* v. *Dept. of Social Services*, 240 Conn. 141, 146–47, 691 A.2d 586 (1997).

"Where the administrative agency has made a factual determination, the scope of review ordinarily is expressed in such terms as substantial evidence or sufficient evidence. . . . Where, however, the administrative agency has made a legal determination, the scope of review ordinarily is plenary." (Citations omitted.) *Christian Activities Council, Congregational* v. *Town Council*, 249 Conn. 566, 581, 735 A.2d 231 (1999). "Pursuant to our standard of review, we examine whether the conclusions of law reached by the trial court resulted from a correct application of the law to the facts of this case." *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 42 Conn. App. 700, 705, 682 A.2d 125 (1996), rev'd on other grounds, 240 Conn. 835, 694 A.2d 1241 (1997).

We begin our analysis with a review of several general principles regarding municipal charters. "It is well established that a city's charter is the fountainhead of municipal powers. . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. . . . It follows that agents of a city, including its commissions, have no source of authority beyond the charter. [T]heir powers are measured and limited by the express language in which authority is given or by the implication necessary

to enable them to perform some duty cast upon them by express language." (Citations omitted; internal quotation marks omitted.) *Perretta* v. *New Britain,* 185 Conn. 88, 92–93, 440 A.2d 823 (1981); see also *Fennell* v. *Hartford,* 238 Conn. 809, 813–14, 681 A.2d 934 (1996); *New Haven* v. *Local 884, Council 4, AFSCME, AFL-CIO,* 44 Conn. App. 764, 768, 694 A.2d 417, cert. denied, 241 Conn. 915, 696 A.2d 984 (1997). "Where the municipal charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that procedure must be followed for the act to be lawful." (Internal quotation marks omitted.) *New Haven* v. *Local 884, Council 4 AFSCME, AFL-CIO,* supra, 769. "When a charter is construed, the rules of statutory construction generally apply." *Norwich* v. *Norwalk Wilbert Vault Co.,* 208 Conn. 1, 9, 544 A.2d 152 (1988).

As with the interpretation of a statute, the interpretation of a charter is a question of law for the court to decide. *Testa* v. *Waterbury,* 55 Conn. App. 264, 270, 738 A.2d 740 (1999). "Rules and regulations adopted pursuant to the authority granted by [a city] charter carry a presumption of validity and have the force and effect of law. . . . When construing a [city] charter, the court must determine the intent of the legislative body that promulgated the rules. . . . To determine the intent of the charter, [t]he enactment must be examined in its entirety and its parts reconciled and made operative so far as possible. . . . Intent is to be ascertained from the language used, if it is plain and unambiguous; or, if it is not, by considering the legislation in the light of all of its provisions, the object which it seeks to accomplish, the pre-existing legislation upon the same subject matter, and all other relevant circumstances." (Internal quotation marks omitted.) Id.

The retirement board is a municipal agency created by § 2702 of the city code. Section 2703 of the city code defines the powers and duties of the retirement board

and provides in relevant part that "[t]he board shall adopt after a public hearing thereon, bylaws and regulations not inconsistent with the law and the provisions of this act."

With these principles and the city code in mind, we now determine whether the creation of a statute of limitations on applications for reinstatement was within the retirement board's authority as set forth in the city code. Both parties agree that the authority of the retirement board is found in the terms of the city code and, specifically, that § 2762 is the governing code provision. Section 2762 of the code, which is entitled "Reinstatement," provides: "Any former participant who ceased to be a participant by reason of severance of service with the city may, upon again becoming an officer or employee of the city, apply to the retirement board for reinstatement. Said board may reinstate such person only upon his payment into the retirement fund of any amounts previously withdrawn therefrom and upon demonstrating to the satisfaction of the retirement board that he is in reasonably good physical condition as indicated by the results of such medical examination as said board may prescribe."

The plaintiffs claim that the retirement board exceeded its authority by establishing a statute of limitations and applying it retroactively to bar their claims for reinstatement in the retirement system. The plaintiffs claim that the retirement board can act only within the powers granted to it by the city code and that the code grants the retirement board limited discretion to deny reinstatement to individuals who do not meet the criteria set forth in § 2762 of the code. The plaintiffs argue that the discretion applies only to those situations where the applicant has not paid back any amounts previously withdrawn or where the retirement board determines that an applicant is not in good physical health as determined by a medical examination pre-

scribed by the retirement board. According to the plaintiffs, the retirement board exceeded its discretion when it considered criteria beyond that set forth in the code.

The retirement board counters this interpretation of the city code and claims that the passing of its resolution and the creation of a statute of limitations governing claims for reinstatement in the retirement system was within its authority under the city code. Specifically, the retirement board claims that the language in § 2762, "upon again becoming an officer or employee of the city," implies a time limit for applicants to seek reinstatement and the retirement board's action in creating a six year statute of limitations was merely a clarification of that existing time limit. The retirement board claims that it is clear from the language of the code that it can limit reinstatement to those who apply promptly after being rehired.

The retirement board has no source of authority beyond the city code and its "powers are measured and limited by the express language in which authority is given or by the implication necessary to enable [the retirement board] to perform some duty cast upon [it] by express language." (Internal quotation marks omitted.) *Perretta* v. *New Britain*, supra, 185 Conn. 92–93.

We do not agree with the retirement board's contention that the language of § 2762 on its face grants the retirement board the authority to impose a six year statute of limitations on applicants for reinstatement in the retirement system. "It is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated." (Citation omitted; internal quotation marks omitted.) *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 133, 717 A.2d 747 (1998). Nowhere in § 2762 is the retirement board granted the authority to impose whatever conditions it deems appropriate for the rein-

statement of applicants. On the contrary, § 2762 sets forth only two eligibility criteria for the reinstatement of participants, that is, payment into the retirement fund of amounts previously withdrawn and passing a physical examination to the satisfaction of the retirement board. The retirement board's imposition of a third and new eligibility requirement that participants apply within six years from their last rehire date was beyond its express authority proscribed by § 2762.

The retirement board's claim that the words "upon again becoming an officer or employee" imply a time limit on applicants and authorize the retirement board to establish a six year statute of limitations is unavailing. Our reading of the plain language of § 2762 reveals that that section fails to set forth any time limit in which applicants for reinstatement must apply or any requirement that an application must be "prompt." If the legislative body that drafted that section had wanted to impose an additional limitation on eligibility, it would have so stated.

Furthermore, our construction of § 2762 is supported when that section is read in conjunction with § 2731 of the Waterbury city code. Section 2731 governs the retirement of teachers and provides in relevant part that "no such person who has passed his forty-fifth birthday when entering the service of the City of Waterbury at any time after January 1, 1946, shall be required to [participate in the retirement system], but such person may elect within the first three months of service as a teacher of said city, to participate in the retirement system as a teacher participant and, failing to elect so to do, he shall not thereafter be admitted to the retirement system unless he makes a new application to participate *within the two years next following the commencement of service as such teacher* . . . ." (Emphasis added.)

In contrast to § 2731, § 2762 provides no specific time limit in which teachers must apply for reinstatement

in the retirement system. "In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws." (Internal quotation marks omitted.) *Tesla* v. *Waterbury*, supra, 55 Conn. App. 270–71. Because the code elsewhere provides and specifies the time in which an applicant for participation in the retirement system must apply, such an omission in § 2762 supports the inference that the drafters intended to provide no such time limit in cases of former participants seeking reinstatement. See *Perretta* v. *New Britain*, supra, 185 Conn. 100. "[W]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." (Internal quotation marks omitted.) *Doe* v. *Statewide Grievance Committee*, 41 Conn. App. 671, 678, 677 A.2d 960 (1996), rev'd on other grounds, 240 Conn. 671 A.2d 1218 (1997). Had the drafters intended a specific time limit on applicants for reinstatement, they would have used language similar to that of § 2731. Thus, the retirement board's creation of a statute of limitations on claims for reinstatement was not within its express authority under § 2762 of the city code.

The retirement board claims that § 2762 grants it broad discretion to deny reinstatement for any reason in addition to an applicant's failure to satisfy the two eligibility factors listed therein. Section 2762 provides that "[s]aid board *may* reinstate such person *only* upon his payment into the retirement fund of any amounts previously withdrawn therefrom and upon demonstrating to the satisfaction of the retirement board that he is in reasonably good physical condition as indicated by the results of such medical examination as said board

may prescribe." (Emphasis added.) The plaintiffs interpret this section to mean that if they pay into the fund any amounts previously withdrawn and demonstrate that they are in good physical condition, the retirement board must reinstate them into the retirement system. We agree with the plaintiffs.

The Supreme Court in *Board of Education* v. *Waterbury Teachers Assn.*, supra, 216 Conn. 620–21, affirmed an arbitration award that included an order to the board of education to send the names of the teachers involved in the litigation to the retirement board, with the recommendation that the teachers be reinstated in accordance with the discretion afforded by § 2762. Thus, the court recognized that reinstatement by the retirement board was not automatic but subject to the discretion afforded by § 2762.

The language of § 2762 that the retirement board "may reinstate . . . only upon" is interpreted by us as establishing the parameters of the limited circumstances in which the retirement board can deny reinstatement, namely, if the applicant does not make the requisite repayment or if she does not satisfy the retirement board that she is in reasonably good physical condition as indicated by the results of a medical examination prescribed by it. Those are the only reasons that allow the retirement board to refuse reinstatement.

Although § 2762 uses the word "may," which ordinarily indicates a discretionary rather than a mandatory act, in the context of the entire code and the facts of this case, we interpret the word as mandating reinstatement when the two stated conditions of § 2762 are met to the retirement board's satisfaction. The word "may" should be interpreted as mandatory rather than directory when the context of legislation permits such interpretation and if the interpretation is necessary to make a legislative enactment effective to carry out its purposes.

*Golden Hill Paugussett Tribe of Indians* v. *Southbury*, 231 Conn. 563, 589 n.5, 651 A.2d 1246 (1995) (*Berdon, J.*, dissenting); *Karp* v. *Urban Development Commission*, 162 Conn. 525, 530, 294 A.2d 633 (1972); *State ex rel. Markley* v. *Bartlett*, 130 Conn. 88, 93–95, 32 A.2d 58 (1943); *Lake Garda Co.* v. *LeWitt*, 126 Conn. 588, 590–91, 13 A.2d 510 (1940); see also *Feuser* v. *Lampron*, 6 Conn. App. 350, 353, 505 A.2d 728 (1986); *Wilburn* v. *Mount Sinai Medical Center*, 3 Conn. App. 284, 288, 487 A.2d 568 (1985).

There are instances in which the word "may" should be read as "must." *State* v. *Palmieri*, 143 Conn. 569, 570, 124 A.2d 911 (1956). "The conclusion to be deduced from the authorities is, that where power is given to public officers, in the language of the act . . . whenever . . . individual rights call for its exercise—the language used, though permissive in form, is in effect peremptory. What they are empowered to do for a third person the law requires shall be done." (Internal quotation marks omitted.) *Capobinco* v. *Samorak*, 102 Conn. 310, 313, 128 A. 648 (1925). "The word may, in a statute, will be construed to mean shall whenever the rights of the public or of third persons depend upon the exercise of the power or the performance of the duty to which it refers." (Internal quotation marks omitted.) Id. "Instances are very common where the word may is used as a synonym for shall or must. The word is usually construed as mandatory, rather than permissive, when a statute prescribing rules of procedure declares that in a certain event the court may act in a certain way. To warrant a different interpretation in such cases, it should clearly appear from other provisions of the statute that the exercise of the power conferred was intended to be discretionary." (Internal quotation marks omitted.) Id., 314.

The case of *State ex rel. Markley* v. *Bartlett*, supra, 130 Conn. 93–95, is instructive and analogous to the

present case. In that case, the court held that a provision of a statute outlining the conditions for the issuance of a certificate of approval of medical licenses that provides that the medical examining board "may accept" out-of-state medical licenses was mandatory if the conditions of the statute were otherwise met. The applicant fulfilled the conditions of the statute and therefore, was entitled to a certificate to practice medicine as of right. The court explained that to effectuate legislative intent, it often is necessary to construe "may" as equivalent to "shall." Id., 93. In the present case, the purpose of § 2762 is to benefit teachers who temporarily left teaching for personal reasons, usually maternity or child care, by allowing them to participate in the retirement system upon their return to teaching. That purpose would be thwarted if the ability to participate were totally discretionary.

Here, the code specifies the requirements that must be met for reinstatement and if the plaintiffs meet the two specified requirements to the retirement board's satisfaction, we conclude that they are entitled as of right to be reinstated. The retirement board could not add another requirement under the guise of claiming it had a broad discretion whether to reinstate the plaintiffs because § 2762 used the word "may."

The judgment is reversed and the case is remanded with direction to render judgment ordering the retirement board to reinstate the plaintiffs on appeal in the retirement system of the city of Waterbury if the stated requirements of § 2762 of the city code are met to the retirement board's satisfaction.

In this opinion the other judges concurred.