[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FACTS
The plaintiff, the parking authority of Fairfield, brings this indemnification action against the defendant, town of Fairfield. The plaintiff seeks indemnification for the costs it incurred in defending and settling a negligence claim brought against it by Christine McGuire and William McGuire. In its complaint, the plaintiff makes the following allegations. On February 23, 1994, Christine McGuire slipped and fell on ice and snow in front of the ticket office at the Fairfield railroad station. The plaintiff alleges that the defendant's negligence was the direct, immediate and proximate cause of Christine McGuire's injury and caused it to expend funds in defending itself against the McGuires' claims and settling such claims. The plaintiff asserts that the defendant is bound to indemnify it for the amount the McGuires recovered and for the damages it incurred as a result of the McGuires' claims.
On June 14, 2000, the defendant filed a motion to strike the complaint on the ground that the plaintiff does not have standing to sue the defendant. On July 17, 2000, the plaintiff filed an objection to the CT Page 5830 motion. Both parties filed memoranda in support of their positions. The court heard arguments on the motion on January 8, 2001.
 DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp.,240 Conn. 576, 580, 693 A.2d 293 (1997). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted; internal quotation marks omitted.) Pamela B. v. Ment, 244 Conn. 296, 308,709 A.2d 1089 (1998).
The defendant has improperly cast this as a Motion to Strike on the basis of a lack of standing. Standing is only properly attacked by a Motion to Dismiss. "The issue of standing implicates this court's subject matter jurisdiction."[1] Fish Unlimited v. Northeast Utilities ServiceCo., 254 Conn. 21, 31, 755 A.2d 860 (2000). "Standing concerns the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (Internal quotation marks omitted.) Med-Trans of Connecticut, Inc. v. Dept. of Public Health Addiction Services, 242 Conn. 152, 160, 699 A.2d 142 (1997). "Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved." (Internal quotation marks omitted.) Crone v. Gill, 250 Conn. 476, 480, 736 A.2d 131 (1999).
In this case, the plaintiff asserts that it has standing pursuant to General Statutes § 7-204. The defendant argues that the plaintiff, as part of the municipality, possesses only such powers as are granted to it by the constitution, the legislature, or the municipal charter and thus the plaintiff does not have standing because § 7-204 does not expressly grant parking authorities the power to sue (except through exercise of the power of condemnation). In opposition, the plaintiff argues that because § 7-204 is silent on the issue of whether it has the power to sue, it has the implied authority to do so. The plaintiff also argues that it has standing to sue under the Connecticut constitution and common law. CT Page 5831
General Statutes §§ 7-202 through 7-207 grant municipalities the power to create parking authorities and delineate the powers the authorities shall exercise. Section 7-202 defines a parking authority as "a body corporate and politic created by the legislative body of any municipality as hereinafter provided. . . ." Section 7-203 provides, in part: "Any municipality may provide parking facilities and may, by ordinance, create a parking authority . . . for the purposes of creating and establishing off-street parking facilities." Section 7-204
specifically provides, in pertinent part: "Such parking authority . . . shall have the power, in the name of the municipality, to create, establish, and expand wherever built by such municipality, off-street parking facilities; acquire by purchase, gift, devise, lease or condemnation . . . real property or any interest therein necessary for or incidental to the construction, maintenance, operation, or expansion of off street parking facilities . . . prepare necessary plans and drawings; construct or cause to be constructed parking facilities; maintain and operate parking facilities; establish and collect reasonable off-street parking fees; give, grant or sell any real property owned by such parking authority to the municipality; dedicate any real property owned by such parking authority to the public purposes for a street or highway; and lease parking facilities or such expanded parking facilities as may be provided, and already subject to lease, to any public agency, individual, firm, corporation or hospital. . . ."
The power of a municipal authority is "measured and limited by the express language in which authority is given or by the implication necessary to enable [it] to perform some duty cast upon [it] by express language." (Internal quotation marks omitted.) Perretta v. New Britain,185 Conn. 88, 92-3, 440 A.2d 823 (1981). Although the legislature did not expressly grant parking authorities the power to sue in § 7-204, such power may be implied as necessary to enable the authority to perform the powers it is expressly granted, such as the power to sell or lease real property to the municipality and the power to acquire and own land.
This interpretation of the statute is consistent with the general principal that, "[i]n construing a statute, we seek to ascertain and give effect to the apparent intent of the legislature. . . . [W]e are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law. . . ."[2] (Citations omitted; internal quotation marks omitted.) Board of Education v. New Haven,237 Conn. 169, 180, 676 A.2d 375 (1996). "Intent is to be ascertained from the language used, if it is plain and unambiguous; or, if it is not, by considering the legislation in the light of all of its provisions, the object which it seeks to accomplish, the pre-existing legislation upon the same subject matter, and all other relevant circumstances." (Internal quotation marks omitted.) Alexander v.CT Page 5832Retirement Board, 57 Conn. App. 751, 759, 750 A.2d 1139, cert. denied,254 Conn. 902, 755 A.2d 217 (2000). Indeed, in one case, the Superior Court held that it is the parking authority, and not the municipality which created it, that has the power to institute a proceeding to take land by right of condemnation for public parking purposes. Middletown v.F.L. Caulkins Automobile Co., 19 Conn. Sup. 45, 109 A.2d 888 (1954).
Morever, § 7-202 expressly provides that a parking authority is a distinct body corporate and politic.[3] If an administrative subdivision of a municipal government constitutes a distinct body politic under state law, it is a separate entity with the power to sue and be sued. Levine v. Fairfield Fire Dept., Superior Court, judicial district of Waterbury, Docket No. 146670 (April 9, 1999, Hodgson, J.). "Certain enabling laws providing for provision of services within a given municipality authorize creation of a separate body politic and corporate, distinct from the municipal corporation having its bounds within the same territorial limits. For example, § 8-40 of the General Statutes authorizing creation of municipal housing authorities, permits a town to establish a separate `body corporate and politic' known as a Housing Authority." Elstein v. City of Milford, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 40452 (January 19, 1993, Flynn, J.); see Gordon v. Bridgeport HousingAuthority, 208 Conn. Conn. 161, 185-86, 544 A.2d 1185 (1988). As noted by the Superior Court, "[i]n the act creating the . . . parking authority, the city . . . is treated as a separate entity, authorized to deal with the parking authority, to advance funds to it, and to be reimbursed by the parking authority for funds so advanced." Middletown v. F.L.Caulkins Automobile Co., supra, 19 Conn. Sup. 45, 47.
The Fairfield Parking Authority has the power to sue under General Statutes § 7-204 and thus has standing in this case.[4]
The Motion to Strike (#102) is denied. The Objection to the Motion to Strike (#104) is sustained.
The Court
DANIEL E. BRENNAN, JR., J.T.R.